101 P.3d 704

**STATE of Idaho, Plaintiff–Appellant,**

v.

**Jeffrey William CHANDLER, Defendant–Respondent.**

**No. 29858.**

Court of Appeals of Idaho.

July 30, 2004.

Review Denied Dec. 8, 2004.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Ronald J. Jarman, Pocatello, for respondent.

LANSING, Chief Judge.

The State appeals the district court's order suppressing evidence obtained through the execution of a search warrant. We reverse.

## I.

## BACKGROUND

In March 2003, Detective Kyle Fullmer of the Idaho State Police began receiving information that Jeffrey William Chandler possessed and sold methamphetamine. Detective Fullmer submitted an affidavit of probable cause (the affidavit) to a magistrate in Bingham County for the purpose of obtaining a warrant to search Chandler's residence. The affidavit detailed three separate occasions between March 17 and April 3, 2003, when police received the information about Chandler through interviews with informants. These were described as follows.

On the first occasion, an informant told police that the informant had accompanied an acquaintance to Chandler's residence and saw the acquaintance purchase a quarter gram of methamphetamine from Chandler. According to the affidavit, the informant knew that Jeffrey Chandler was supplying methamphetamine to two named individuals.

Next, on March 31, an informant told police that the informant had purchased methamphetamine from Chandler on several occasions and that the informant presently owed Chandler approximately $200 for methamphetamine. The informant said that he/she had personally observed three to four ounces of methamphetamine at a time in Chandler's residence, and had personally observed Chandler dig up hidden methamphetamine with a shovel. This informant gave police directions to Chandler's residence, and identified the residence when driven to that location by police. The informant admitted to police that he/she had been using methamphetamine for about eight years and that he/she had been arrested in the past for delivery of controlled substances.

Lastly, on April 3, an informant told police that the informant had personally observed Chandler sell three "teeners" of methamphetamine to someone known to the informant. The informant also observed Chandler place about three ounces of methamphetamine in a glove and hide it in the bushes near his residence. The informant reported having seen guns on Chandler's property, and having been told that some of the guns were stolen.

Detective Fullmer conducted a criminal history search on Chandler and discovered that he had previously been convicted of possession of a controlled substance with intent to deliver and arrested for possession of drug paraphernalia. Based upon all of this information, Detective Fullmer applied for a warrant to search Chandler's property. The affidavit did not give any informant's name nor state whether there were one, two, or three different informants, but the affidavit did state that on each occasion the informant was someone whose identity was known to the police.

The magistrate issued the search warrant as requested, finding that there was probable cause to believe that evidence of controlled substances, firearms, and stolen property would be found on the premises. A search of Chandler's property turned up methamphetamine and multiple firearms. Chandler was charged with possession of methamphet-

amine, Idaho Code § 37–2732(c)(1), and unlawful possession of a firearm, I.C. § 18–3316. He moved to suppress all evidence obtained from the search, contending that the warrant was issued without probable cause. The district court ordered the evidence suppressed and, in the same order, dismissed the case.

The State appeals, contending that the district court erred by applying the wrong standard of review to the magistrate's finding of probable cause and by basing its decision upon the erroneous belief that information supplied by one confidential informant could not be used to corroborate information supplied by another.

## II.

## ANALYSIS

■■■■ In examining a challenge to a search warrant, an appellate court's function is limited to reviewing the search warrant affidavit and determining whether the magistrate had a substantial basis for concluding that probable cause existed. *State v. Lang,* 105 Idaho 683, 684, 672 P.2d 561, 562 (1983); *State v. Molina,* 125 Idaho 637, 639, 873 P.2d 891, 893 (Ct.App.1993). Great deference is accorded to the magistrate's determination of probable cause, as the United States Supreme Court emphasized in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983):

> [W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's determination of probable cause should be paid great deference by reviewing courts. A grudging or negative attitude by reviewing courts toward warrants, is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a common-sense, manner.

*Gates,* 462 U.S. at 236, 103 S.Ct. at 2331, 76 L.Ed.2d at 546 (internal quotation marks and citations omitted). *See also Molina,* 125 Idaho at 639, 873 P.2d at 893; *State v. Chapple,*

124 Idaho 525, 527, 861 P.2d 95, 97 (Ct.App. 1993). On appeal, our review of the magistrate's decision to issue the warrant is conducted with due regard for, but independently from, the district court's decision. *See, e.g., State v. Kenner,* 121 Idaho 594, 597, 826 P.2d 1306, 1309 (1992); *State v. Donohoe,* 126 Idaho 989, 991, 895 P.2d 590, 592 (Ct.App. 1995).

■■■■ Probable cause is determined by examining the totality of the circumstances and making a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before the court, including information from an informant, there is a fair probability that contraband or other evidence of a crime will be found in a particular place. *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548; *Lang,* 105 Idaho at 684, 672 P.2d at 562; *State v. Wilson,* 130 Idaho 213, 215, 938 P.2d 1251, 1253 (Ct.App.1997); *Chapple,* 124 Idaho at 527, 861 P.2d at 97. In adopting this "totality of the circumstances" test in *Gates,* the United States Supreme Court abandoned a previous standard developed in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), which required that the government demonstrate both the informant's veracity and the informant's basis of knowledge. In *Chapple,* 124 Idaho at 528, 861 P.2d at 98, we explained the effect of the *Gates* decision:

> [T]he Court did not completely abandon the two-pronged test of *Aguilar–Spinelli* but suggested that the two prongs are closely intertwined, so that "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." [*Gates* ], 462 U.S. at 233, 103 S.Ct. at 2329 [76 L.Ed.2d at 545]. Thus, while the "totality of the circumstances" has eliminated the rigid requirements of "veracity" and "basis of knowledge" derived from the *Aguilar–Spinelli* decisions, these standards remain a useful first step in evaluating probable cause where the information is derived, at least in part, from an undisclosed informant. *State v. Prestwich,* 110 Idaho 966,

719 P.2d 1226 (Ct.App.1986); *State v. Schaffer*, 107 Idaho 812, 817, 693 P.2d 458, 463 (Ct.App.1984).

The factors to be considered when a report from an informant forms all or part of the basis for a warrant application are further discussed in *State v. Peterson*, 133 Idaho 44, 981 P.2d 1154 (Ct.App.1999):

> Where the information has come from a "citizen informant," disclosure of the person's name and address will ordinarily be sufficient to show the informant's veracity and reliability, but where the informant is part of the "criminal milieu" more information is necessary. The additional evidence of reliability may be provided by the informant's acknowledgment that he or she has participated in criminal activity. If the informant's identity is known, the "risk and opprobrium" from acknowledgment of criminal conduct is correspondingly greater, and thus the hearsay assertions of a known informant may be given more credibility. Such admissions may not be dispositive of the informant's reliability and credibility, but when coupled with other indicia of reliability in the affidavit, they will support a finding of probable case.

*Peterson*, 133 Idaho at 47, 981 P.2d at 1157 (citations omitted). We also pointed out that an informant whose identity is known to the police is not to be treated as an anonymous tipster even if the informant's name is not disclosed to the magistrate:

> ... Peterson's initial assertion in his appellate brief that the informant's identity was not known to the magistrate, even if it were supported by the record, would be of no significance. It is not whether the *magistrate* was aware of an informant's identity, but whether *law enforcement officials* knew the identity, that is important.

An informant will know that if law enforcement personnel are aware of his or her identity, negative consequences can flow from the provision of false information. An informant cannot possibly foresee, at the time of giving information to police officers, whether the officers will disclose his or her identity to a magistrate, and therefore the presence or absence of such disclosure cannot possibly affect the informant's truthfulness.

*Peterson*, 133 Idaho at 48 n. 1, 981 P.2d at 1158 n. 1 (emphasis in original).[1]

■ In the present case, giving the required deference to the magistrate's determination and drawing reasonable inferences in favor of the warrant's validity, we conclude that probable cause was established. Although Detective Fullmer's affidavit does not expressly so state, it is reasonable to infer that there were three separate informants providing information about Chandler's drug activities. The absence of any indication in the affidavit that all of the information came from the same person, and the differing details provided on each occasion, imply that there was more than one informant.[2] Although the informants were "confidential" in the sense that the police did not disclose their identity, they were not anonymous, for their identity was known to police. They gave their information during in-person interviews and risked accountability to the police if they provided false information. Although these informants were part of the "criminal milieu" and therefore were not entitled to a presumption of veracity as in the case of a citizen informant, the fact that their identity was known to police reduces the measure of corroboration that is necessary. Such corroboration may be supplied by information from other confidential informants.

---

1. In his argument Chandler does not differentiate between confidential informants and anonymous informants. He relies in part on language in *State v. Patterson*, 139 Idaho 858, 864, 87 P.3d 967, 973 (Ct.App.2003), where we inartfully stated, "The reliability of an anonymous informant can be demonstrated either through the general credibility of the C.I. [confidential informant] or through the reliability of the specific information provided." In this sentence, the term "anonymous informant" should have been "confidential informant."

2. If Chandler believed that there was, in fact, only a single informant and that the detective's affidavit thereby misled the magistrate, he could have requested an evidentiary hearing to demonstrate that the affidavit was materially misleading. *See Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *State v. Kay*, 129 Idaho 507, 511, 927 P.2d 897, 901 (Ct.App. 1996).

**764**

See *United States v. Goodson,* 165 F.3d 610, 614 (8th Cir.1999) (noting that informants' mutual corroboration was enough to support a finding of probable cause); *United States v. Hooshmand,* 931 F.2d 725, 735 (11th Cir. 1991) (noting that five informants corroborated each other); *People v. Sheridan,* 2 Cal. App.3d 483, 82 Cal.Rptr. 695, 698 (1969) ("It appears to be established that the corroboration of an untested informer ... may be supplied by information from other untested informers."). Here, the three informants corroborated one another. Finally, each informant indicated that he/she had a reliable basis of knowledge, having gained the knowledge reported to police through direct contact with Chandler and/or direct observation of drugs at his residence.

The police did not conduct surveillance to independently verify the informants' claims of drug sales at Chandler's residence, but Detective Fullmer did determine that Chandler had a history of drug possession. This information together with the mutual corroboration of multiple confidential informants, their solid basis of knowledge from personal observation, and the second informant's admission against penal interests in acknowledging the informant's own drug use cumulatively lend sufficient credibility to provide probable cause under the totality of the circumstances test. Therefore, the district court's order suppressing evidence found during execution of the search warrant must be reversed.

### III.

### CONCLUSION

For the foregoing reasons, we vacate the district court's order suppressing the evidence and dismissing this action. The case is remanded to the district court for further proceedings.

Judge GUTIERREZ and Judge Pro Tem CAREY concur.